ÆTNA CASUALTY & SURETY COMPANY *v.* PEOPLES
BUILDING & LOAN ASSOCIATION.

4-4779

Opinion delivered November 1, 1937.

774

*John Sherrill* and *Frank Wills, Ira J. Mack* and *Buzbee, Harrison, Buzbee & Wright*, for appellants.

*Fred M. Pickens*, for appellee.

McHANEY, J. At all times hereinafter mentioned, appellant, W. T. Parish, was secretary of the appellee, People's Building & Loan Association of Newport, Arkansas, and the appellant, Aetna Casualty & Surety

Company, hereinafter called Aetna Company, was surety on his bond as such. At the same time said Parish was cashier of appellant, First National Bank of said city, hereinafter called the bank, and the appellant Fidelity & Casualty Company of New York, hereinafter called Fidelity Company, was surety on his bond as such cashier. He was the chief executive and operating officer of appellee and kept the books and conducted its affairs at the office of the bank. In December, 1934, he was relieved of his duties with appellee and the bank, on account of certain peculations disclosed by an audit of the books of appellee. The bond of the Aetna Company provides that it "binds itself to pay to People's Building and Loan Association, Newport, Arkansas (as employer), such pecuniary loss as the employer shall sustain of money or other personal property (including that for which the employer is legally responsible) through the fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction, misappropriation, or any other dishonest or criminal act committed by the employee directly or in connivance with others while such employee holds such position at any location in the service of the employer, during the period commencing with the first day of August, 1929, at twelve o'clock noon, Standard Time." This bond was in force from August 1, 1929, to August 1, 1934. Another provision of the bond is, that, upon discovery of any loss by the employer, notice shall be promptly given to the surety and within three months make a written statement of the claim giving particulars of such loss. And further: "The surety shall have two months after claim has been presented in which to verify and pay same, during which time no legal proceedings shall be brought against the surety as to that claim * * *." No claim was made against the Aetna Company until April 19, 1935, and suit was not filed until August 13, 1935.

On the last mentioned date, appellee brought this action against all appellants to recover on the items hereinafter discussed. Issue was joined and a trial resulted in a decree against appellants for the different items hereinafter mentioned, with interest from the date

of the loss, in one instance running back to 1929. The case is here on appeal.

Appellants first contend that they are not liable for interest. We agree to this extent, that they are only liable for interest on the claim from June 19, 1935. Under the plain provision of their bonds, above quoted, they had sixty days after the claim was filed, to pay it, during which time no suit could be brought. The claim having been presented on April 19, 1935, they had until June 19th in which to pay. After that time they were liable, in the event of recovery on the claim, for interest at the legal rate of 6 per cent. per annum. In this respect, the judgment will be modified.

We will now consider the separate items of the claim. No. 1 is referred to as the Claire N. Phillips note. As to this item, the proof shows and the court found, that, on August 6, 1932, Parish put in the assets of appellee a note purporting to be signed by Mrs. Phillips for $2,000, but which was not signed by her, and was a forgery; and on the same day he drew a check in her favor for $2,000 on the bank, which was paid and charged to the account of appellee. Mrs. Phillips did not get the check, did not indorse it and did not receive any of the proceeds therefrom. The check itself was not available and was not put in evidence, but the stub of the check was and it reflected the character of the check as stated. Appellants contend that the appellee suffered no loss by this transaction. If the note had been genuine, there might be some force to this argument. But it was not, and appellee is out the $2,000 from its deposit in the bank. The latter says it is not liable, because Parish obtained possession of the check through his connection with appellee. That is true, but he was enabled to cash it on a forged indorsement because he was cashier of the bank. Therefore, both the Aetna Company and the bank, including the Fidelity Company, are liable for this item.

Item 2 relates to the Roy Moon note, amounting to $474.60, which was made payable to Parish personally for insurance premium. On November 29, 1929, Parish placed this note in the assets of appellee and withdrew

from its funds the amount for which it was discounted to it. Moon paid Parish one-half this note prior to his death, and his administratrix paid the other half after his death on the claim presented. Parish did not account to appellee for these payments. It is contended by the Aetna Company that appellee still has the note and can collect upon it. But the undisputed proof shows that its agent received the full amount of money to satisfy same and did not account to it therefor. Therefore, the court correctly held that the Aetna Company only is liable for said amount.

Item 3 relates to two checks drawn on the bank by J. Collison and payable to appellee, one for $440 dated September 29, 1929, and the other for $340, dated October 10, 1931. These checks were promptly cashed, charged to the account of Collison, but were not credited to appellee's account in the bank. The former was cashed on a rubber stamp indorsement, while the latter was not indorsed at all, although it was the unvarying custom in the bank not to cash a check on a rubber stamp indorsement, but only to credit to the account of the payee, and not to cash any check with no indorsement by the payee. The necessary inference is that Parish, by virtue of his connection with the appellee, came into possession of the checks, but which he would have been unable to embezzle, except for his position with the bank. He later credited appellee's account in the bank with $100 on account of the latter check, leaving a net loss to it on the two checks of $680. Therefore, both the Aetna Company and the bank are liable, as the court correctly held.

Item 4 relates to the draft of the Manhattan Savings Bank & Trust Company of Memphis, Tennessee, drawn on the bank for $1,251 and which was paid by Parish by taking the money of appellee and charging same to appellee by a charge ticket. This occurred on July 6, 1934. Later he put back into appellee's account $251, leaving a loss to it of $1,000. We think the court correctly held the Aetna Company and the bank both liable.

Item 5 relates to a check drawn by Parish as secretary of appellee, payable to J. M. Arthurs, dated No-

vember 6, 1934, in the sum of $1,000, purporting to be in payment of the maturity value of stock certificate No. 52, owned by Arthurs. The check was cashed by the bank without indorsement and Parish got the money. Arthurs did not get it and the stock was not canceled, but the check was charged to the account of appellee in the bank, and the latter is liable for said amount. The Aetna Company is not, as its bond had expired. The court correctly so held.

Item 6 relates to a check drawn by Parish to W. A. Rossington Estate—G. Hurt, Administrator, for $949.17, purporting to be in settlement of the maturity value of stock in appellee. This check was cashed on a forged indorsement and charged to appellee's account June 8, 1934. Said estate did not get the money. Later appellee paid the estate the amount of the stock, so appellee paid it twice. The Aetna Company and the bank are both liable for the amount of this item to the extent of $949.17, instead of $1,000, as allowed by the court.

Item 7 relates to the withdrawal by Parish from the personal account of P. L. Oliver with the bank of $1,000, on November 6, 1934. Later, on November 30, 1934, Parish cashed a counter check on appellee for the same amount and credited it back to Oliver's account, and entered it on appellee's books as a loan to him on the latter date. For this item, the bank alone is liable to appellee as the Aetna Company's bond had expired. Certainly the bank would have been liable to Oliver had the money not been returned to his credit, and it appears to us that it should be liable to appellee when its own agent stole from the latter to repay Oliver.

These are all the items claimed for which the court allowed judgment. A total of these items shows that the Aetna Company and the bank, and, of course, its surety, the Fidelity Company, are jointly and severally liable for the sum of $4,629.17; that the Aetna Company alone is liable separately for the sum of $474.60; and the bank and the Fidelity Company are separately liable for the sum of $2,000. All of these items to bear interest from June 19, 1935, until paid, at 6 per cent. per annum. The Aetna Company's liability is limited to $5,000 principal

in its bond, and the, judgment against it, will be limited to that amount, but not including interest.

In the respects above indicated, the judgment will be modified, and as so modified, it will be affirmed. It is so ordered. Judgment will also be rendered against the Fidelity Company in favor of the bank for the full amount of the judgment herein rendered against said bank, with interest and costs, as prayed in its cross-complaint.