GLENS FALLS INS. CO. *v.* BROWNING.

5-1545                                             312 S. W. 2d 335

Opinion delivered April 21, 1958.

*McMillen, Teague & Coates,* for appellant.

*Botts & Botts* and *Wood & Smith,* for appellee.

PAUL WARD, Associate Justice. The principal question for decision is whether the jury's verdict is supported by substantial evidence.

Appellee, W. M. Browning, is the owner of a metal-clad building at DeWitt used to store rice. Appellant, Glens Falls Insurance Company, had insured the rice against the peril of windstorm and the other appellant insurance companies had likewise insured the building. The building and a portion of the rice stored therein were damaged on or about March 20, 1955. At the trial Browning contended the damage was caused by windstorm and appellants contended the damage was caused by collapse of the building — the result of heavy rains

and the building's faulty foundation. The jury returned a verdict in favor of Browning in the full amount sued. On appeal the only point relied on by appellants is "that the physical facts presented in the proof show conclusively that the damage was not caused by windstorm, but was caused by collapse."

Under the familiar rules of this court the jury's verdict must be sustained if it is supported by substantial evidence, and in reviewing the testimony it must be considered in the light most favorable to appellees. The testimony will be summarized in the light of these rules.

On the night before the damage occurred there was a heavy rainstorm in the area around DeWitt. When Browning observed the granary building the following morning, the rear end had collapsed onto the ground and a portion of the rice then in storage had become wet and damaged by sifting out at the seams where the building had come apart. Harold L. Smith, a witness for appellants, who has been a practicing engineer in the vicinities of Stuttgart and DeWitt since 1952, made an examination of the damaged building some 25 days after its collapse. He found the metal siding warped or torn loose from the bottom to the top and the north end of the building sitting flat on the ground, while the south end was still on the piers; the north end bore the greater weight and had settled somewhat; the building was built on two kinds of soil, that on the south side being more stable than that on the north side; the northwest corner of the building is buried in the soil approximately one foot in depth; he could detect some saturation of the soil at the time of his examination. In his opinion the damage to the building came from the weight pushing down or pushing sideways. He estimated that the weight on the foundation of the building was about 2 1/2 times more than it should have been. The piers had failed on the east side where the roof was damaged and on the west side where there was a crack in the wall. He remembered the storm on March 20, and knows that a creek about 150 feet from the building was flooded. On cross-examination he stated he did not know the wind velocity in the area of DeWitt on March 20.

In substance, appellee Browning, t e s t i f i e d: On March 20, 1955 there was a rainstorm with high wind near St. Charles, and there were considerable limbs thrown all over Main Street. When I first saw the building in DeWitt the east end didn't seem to be much changed but when I walked west 5 or 6 feet I saw the building was flat down on the ground; it was raining pretty hard and quite a bit of wind was blowing; in places the sheet iron roofing was bent up 6 to 10 inches, and there was quite a good deal of sheeting loose on the sides of the building — mostly on the east side. A shed and shop building nearby were also damaged by the wind; the granary was damaged in several places and I hired men to repair it. The only water that got under the building was from rain that ran off the building and then under it; most of the ground under the building was wet; the grain was about evenly divided in the building — each end was full but some bins in the middle were empty. If the wind pushed the building over, it would cause it to buckle in the middle the way it did; I do not know exactly what kind of a windstorm there was in DeWitt on the 20th but the next morning there were gusts of wind; it was so rough none of us wanted to go on top of the building. At the time I took out the Insurance nothing was said about how the b u i l d i n g should be constructed or as to how much grain should be stored therein.

Other witnesses for appellees testified in substance as follows: Lucien Nugent said he didn't know how hard the wind blew at DeWitt on the night of the 20th, but he did know it blew hard and rained. Lucien Nugent said the wind blew pretty hard — hard enough that his wife was scared and he had to stay up a good while that night on her account. Raymond Horton said the wind was blowing "right strongly" on the night of the 20th, and the next morning he heard the tin roof on the granary flopping in the wind. He also stated that the wind that morning was blowing from the northeast, and the north end of the building was moved to the west about 5 or 6 feet.

Appellants question none of the instructions, and cite no authorities. They rely entirely upon the testimony of Harold L. Smith which, they contend, shows positively and conclusively that the damage was caused by the faulty foundation under the building. We cannot agree with this contention. We can agree that all of the testimony presents a close and difficult question of fact. It is, however, the province of the jury and not this court to resolve this question. As we view the entire record, there are several facts and circumstances, which constitute substantial evidence upon which the jury could have rested its verdict, even though fair minded men might reasonably disagree.

Appellees have filed a cross-appeal, claiming the trial court should have allowed them interest from May 20, 1955 (60 days after the loss occurred) rather than from the day suit was filed on September 8, 1956. We agree with appellees. The policies in question provide that loss shall be payable 60 days after proof of loss. It appears undisputed that appellants denied liability from the beginning, thereby waiving proof of loss. See: *Aetna Casualty and Surety* v. *Peoples Building & Loan Association,* 194 Ark. 773, 109 S. W. 2d 943, and *Hartford Fire Insurance Company* v. *Enoch,* 79 Ark. 475, 96 S. W. 393.

Appellees' separate motion for additional attorneys' fee in this court is denied. The fee allowed appellees' attorneys by the trial court appears to be reasonable, including this appeal.

Affirmed on direct appeal and reversed on cross appeal for further proceedings in conformity with this **opinion.**