SOCIAL SECURITY ADMINISTRATION, BALTI-
MORE FEDERAL CREDIT UNION *v.* EMPLOYERS
MUTUAL LIABILITY INSURANCE COMPANY
OF WISCONSIN

[No. 298, September Term, 1963.]

494

*Decided May 1, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, HORNEY, MARBURY and SYBERT, JJ.

*H. Emslie Parks,* with whom was *Z. Townsend Parks, Jr.,* on the brief, for the appellant.

*Robert L. Karwacki,* with whom was *John S. Hebb, III,* on the brief, for the appellee.

HAMMOND, J., delivered the opinion of the Court.

This appeal must determine whether a corporate insurer under a fidelity or indemnity bond is liable to a defrauded employer for interest on the principal sum embezzled by an employee.

The appellant is a federal credit union. An assistant treasurer, a Miss Mand, perpetrated a series of embezzlements of money belonging to her employer by purportedly making loans to fictitious persons and pocketing the proceeds. From June 1957 to February 1962 she entered on the credit union's records some one hundred twenty such loans, totalling $50,890. According to the stipulation of facts:

> "The repayment of all these loans was kept current by Mand by payments as required under the terms prescribed by the Plaintiff at the time that the loans were granted, and one of the loans was completely repaid with interest. Of the total amount of the repayments, $6,885.36 was credited [by Mand] to interest on the books of the Plaintiff."

On May 11, 1962, Mand voluntarily disclosed her peculations. At all times here pertinent the credit union was insured by the appellee, a Wisconsin insurance company duly qualified to do business in Maryland, under a "credit union blanket bond," which stated that the insurer's liability was a sum equal to the "total assets of the insured" at the time a loss was incurred up to a then applicable limit of $1,000,000 as to any loss. By the bond the insurer, among other things, agreed "to indemnify the insured for direct loss of, or damage to, any property, as defined herein, caused by the fraud or dishonesty of any of the insured's employees * * *." Under the policy definition, "property" included "money."

The bond conditions required the giving of written notice of any loss, and then provided:

> "and within 90 days after giving such notice the insured shall file with the company an itemized proof of claim duly sworn to. The company shall have 30 days after proof of claim is filed in which to investigate the claim. No action shall be brought against the company under this bond unless begun within twelve months after the insured shall learn of the loss * * *."

The insured complied with the conditions as to notice and proof of loss, claiming some $41,000. After making its own

audit, the insurer on September 17, 1962, tendered a check for $34,138.86, which was $6,885.36 less than the insured sought. The tendered check was accepted on the agreement of the insurer that it was without prejudice to the insured's right to claim and sue for the additional $6,885.36 in dispute.

The theory of the insured is that its dishonest employee was liable to it for interest on the money she stole, from the date of its misappropriation, and, under the bond, the insurer stands in the shoes of the employee. (It contends primarily that the sum of $6,885.36 represents interest on the money stolen and, alternatively, that it should not have been applied to reduce the total of the amount stolen but rather treated as the employee purported to treat it—as interest on the "loans" she made to herself under fictitious names.) The insurer contends that since the bond in terms affords it a period of thirty days after proof of loss has been filed, "in which to investigate the claim," its liability to pay a loss did not arise until the expiration of the thirty days, and only then would interest begin to run. (In its computation of the loss suffered, the insurer treats the sum of $6,885.36 as repayment of stolen principal.)

In deciding whether interest is payable by the guarantor of the honest conduct of another who has defaulted, the Courts have usually stated the crucial question to be whether interest is due from the time of defalcation or from the time demand is made on the guarantor, and have divided in their answers. See annotation in 57 A. L. R. 2d 1317, 1324-1325, and 11 *Appleman, Insurance Law and Practice*, Sec. 6426, p. 195.

The true distillate of the authorities, as we read them, is that interest is due from the time of defalcation if it is a part of the loss or damage guaranteed against, up to but not above the penalty of the bond or insurance policy, and the guarantor also must pay interest on the sum for which he is liable under the contract instrument, from the time he should have paid the loss.

Some, if not most, of the differences in the results of the cases have come from failure to distinguish between, on the one hand, interest which is owed because it is part of the fundamental obligation of the guarantor under his contract, and, on the other, interest which is chargeable against the guarantor

because he did not pay whatever amount he was liable to pay when, under the contract, he should have paid it. Other differences in result have flowed from failure to recognize, in the particular case, that the amount of the stolen corpus equalled or exceeded the full penalty of the bond or insurance policy and that, therefore, the guarantor could not be liable for any additional amount, including interest which was part of the loss, but only, if at all, for interest due because he did not pay the loss, when he should have. See *Banking Com'n v. National Surety Corp.* (Wisc.), 11 N. W. 2d 171; *Guarantee Co. v. Mechanics' Sav. Bank & Trust Co.* (6th Cir.), 80 F. 766 (in which interest was allowed from time of defalcation to time of notice to the guarantor but not during the three months' period subsequent to the giving of notice given the insurer by the policy to investigate a claim); *Totowa v. American Surety Co. of N. Y.* (N. J.), 188 A. 2d 586; *Massachusetts Bonding & Ins. Co. v. United States* (9th Cir.), 97 F. 2d 879, 881.

In *McShane v. Howard Bank,* 73 Md. 135, this Court adopted the view that interest ran from the dates of defalcation of the cashier of a bank who had embezzled its funds under the pretense that he had borrowed them. The condition of his bond was that it would be void "if the above bound [cashier] * * * do and shall well and faithfully discharge the duties imposed upon him as the cashier of said bank * * *." (p. 146) After pointing out that the terms of the contract control and that a surety's obligation is to be strictly construed and his liability is not to be extended by mere implication beyond the letter of his contract, Judge McSherry, for the Court, said at pages 159-160:

> "*** was the Superior Court right in instructing the jury to allow interest on each of the items making up the total defalcation of Ridgaway, from the respective dates of those items? Generally speaking, the rule is that interest should be left to the discretion of the jury; but this rule is not without exceptions, and amongst its exceptions are cases on bonds or on contracts to pay money on a day certain, and cases where the money has been used. * * * Ridgaway improperly

and unlawfully took and applied to his own use, the money of the bank, and his obvious duty is to put the bank in the precise position it would have occupied had the money not been taken and retained by him. As between him and the bank the duty on his part to pay interest on each sum he embezzled from the time of embezzlement was as positive as the duty to repay the money itself. The whole sum and the interest on each item make up the true measure of damages against him for wrongfully taking and detaining or using the money of the bank. The extent of his liability fixes the extent of the responsibility of his sureties whenever the latter are answerable for him. *Gott v. State,* 44 Md. 339."

Below, Judge Prendergast concluded that the unconditional promise of the surety in *McShane* fixed liability at the moment each theft took place, but that under the bond in the case before us the insurer did not undertake to pay losses "when and as they occurred, unconditionally, but rather only after notice and an opportunity to check each item of loss," and that "[i]t was then, and not before, that its liability became fixed." He found that the cases in which there were policy provisions for notice, proof of loss and an opportunity to investigate had been uniform in holding that "interest may not be allowed until after the expiration of that time [the end of the period for investigation]" and, in agreeing, said:

"When corporate suretyship, as we know it today, replaced that unsatisfactory system [gratuitous individual sureties], the sureties insisted on predicating their obligations on various conditions. No doubt one of the objectives sought to be thus attained was to avoid payment of interest until the surety had a fair opportunity to determine for itself the true amount of its loss. To hold that this objective was not accomplished in this case would, in the opinion of this court, do violence to the plain language of the bond being construed."

We reach a contrary conclusion. The bond before us indemnifies the credit union against "direct loss of, or damage to" money resulting from dishonesty of an employee. Obviously, and concededly, (a) the money taken was owed by the taker, the defrauding employee, to her employer and, being unrepaid, was a direct loss to the insured, and (b) the defrauding employee also owed to her employer interest on the money she took, from the time she took it, because the owner of the money was deprived of its use and earning power. *Green v. State,* 122 Md. 288, 297. We think the deprivation of the amount of the interest due the employer resulted directly, as a natural and continuing sequence, without efficient intervening cause, from the wrongful acts of the employee and so was a "direct loss of, or damage to" money of the employer, proximately occasioned by the dishonesty of an employee, to use the words of the bond.

*Oleck, Damages to Person and Property,* says "under a fidelity or indemnity bond, a loss means a deprivation of property resulting from a dishonest act of another" (Sec. 10, p. 21), and " 'direct damages' are those that follow as a proximate, direct result of a wrong, without any special concurring factors on which they depend." (Sec. 22, p. 26).

In *Boiler Ins. Co. v. Sonneborn,* 96 Md. 616, the policy insured "against all immediate loss or damage, except by fire, to the property of the assured" caused by boiler explosion. As a result of the explosion of a boiler, steam melted the heads of automatic sprinklers in the building and the water which leaked as a consequence damaged merchandise. The insurer was held liable for the damage to the merchandise, the Court saying:

> "The word 'immediate' used in reference to 'loss and damage,' in a policy of insurance must be given a reasonable construction, and it is held to mean direct or proximate cause as distinguished from a remote cause." (p. 629)

In *Totowa v. American Surety Co. of N. Y.,* referred to above, Chief Justice Weintraub, for the Supreme Court of New Jersey, pointing out that interest due from time of defalcation,

as part of the loss, was not a forbidden penalty, as claimed by the insurer, said (p. 595 of 188 A. 2d) :

> "Rather it is payable as compensation, as damages for the illegal detention or withholding of what was due the Borough. * * *
>
> "The loss of use of the moneys was part and parcel of the injury the unfaithful official inflicted upon the Borough. When the surety made its engagement it knew that if the principal obligor breached the condition of the bond, the ensuing loss would include the loss of use of the moneys misappropriated as well as the moneys themselves. Unless the Borough receives reimbursement for both principal and interest, it will not be made whole. It will suffer a loss in the face of the surety's promise that it would not.
>
> "We are satisfied therefore that the surety is answerable for the official's liability for interest."

The *Totowa* case held the insurer also liable for the insured's expenses in ascertaining the amount of the losses, saying (p. 594 of 188 A. 2d) : "All the parties had to know that the expenses here incurred would likely follow from the principal's breach of his official duty." See also *Edmunds-Bouvier S. & L. Ass'n v. New Amsterdam Cas. Co.* (Pa.), 132 A. 2d 181, and *Ninth Federal Savings & Loan Ass'n of New York City v. United States Fidelity and Guaranty Co.,* 50 N. Y. S. 2d 372, in which the same conclusion as to expenses was reached. We think the reasoning and conclusions of the cases cited as to interest and expenses being a direct loss or damage are apposite here.

Under a fair reading of the bond provisions, the liability of the appellee before us included interest due the employer by the thieving employee from the dates of defalcation, as in the *McShane* case. The conditions of the bond as to notice, proof of loss and period to investigate gave the insurer an opportunity to ascertain just what its liability — as defined in the bond—was and enabled it to delay payment of that liability, without interest, up to the stated limit, until that period ex-

pired, but they do not prevent interest being considered as part of the liability contracted for if by other provisions of the contract it was. The Supreme Court of Pennsylvania, which takes the view of the *McShane* case that interest runs from the time of defalcation, pointed this out in *Edmunds-Bouvier S. & L. Ass'n v. New Amsterdam Cas. Co., supra.* See also *Guarantee Co. v. Mechanics' Sav. Bank & Trust Co., supra.*

The seemingly pertinent cases in which the policy provided for notice, proof of loss and period for investigation on which Judge Prendergast and the appellee rely, fall into two groups. In the first group are cases such as *Forest City Building and Loan Ass'n v. Davis* (N. C.), 133 S. E. 530, *Aetna Casualty and S. Co. v. Peoples Building and Loan Ass'n* (Ark.), 109 S. W. 2d 943, and *Hartford Accident and I. Co. v. Collins-Dietz-Morris Co.* (C. A. 10th), 80 F. 2d 441, in which the loss, exclusive of interest, was greater than the penalty limit of the contract instrument so that interest as part of the loss could not have been awarded. (It is to be noted that the penalty limit of the bond in the case before us was not even approached by the amount of the loss, without regard to interest.) The second group includes cases such as *Lemay Ferry Bank v. New Amsterdam Casualty Co.* (Mo.), 149 S. W. 2d 328, and *Grand Lodge of the S. F. v. United States F. & Guar. Co.* (Wash.), 98 P. 2d 971, in which it is not apparent whether the contract limit, without regard to interest, was exceeded by the loss but which, in any event, we find unpersuasive because the reasons for the findings that interest is not allowable as part of the loss are not stated.

The reasoning and conclusions of the *McShane* case have been those of various Courts whose views are entitled to respect. See *Bank of Brighton v. Smith* (Mass.), 12 Allen 243; *Wyman v. Robinson*, 73 Me. 384; *Guarantee Co. v. Mechanics' Sav. Bank & Trust Co., supra; Massachusetts Bonding & Ins. Co. v. United States* (9th Cir.), 97 F. 2d 879, 881, *supra; Burns v. Massachusetts Bonding & Ins. Co.* (D. Ct. Cal.), 146 P. 2d 24; *Bank of Erie Trust Co. v. Employers' L. Assur. Corp.* (Pa.), 185 A. 224; *Edmunds-Bouvier S. & L. Ass'n v. New Amsterdam Cas. Co.* (Pa.), *supra; Totowa v. American Surety Co. of N. Y.* (N. J.), *supra.*

502

For examples, see *Bank of Erie Trust Co.* where Justice Stern, for the Supreme Court of Pennsylvania, said that (p. 226 of 185 A.)

> "in other jurisdictions, the general weight of authority seems to be in favor of holding the surety liable for interest from the time when the defalcation by the principal occurs, if such liability does not cause the claim to exceed the penal sum of the bond. Clearly, in a bond such as that in the present case, insuring against losses, the insured should be allowed the same measure of reimbursement from the insurer as it could have obtained in an action against the defaulting principal, and such recovery would certainly include interest from the time of dafalcation,"

and *Totowa* in which Chief Justice Weintraub for the Supreme Court of New Jersey said (p. 595 of 188 A. 2d) :

> "We think the surety on an official bond should answer for the same damages for which the principal obligor is liable. The surety underwrites the principal's behavior ; it vouches for him.

> \* \* \*

> "Unless the Borough receives reimbursement for both principal and interest, it will not be made whole."

The judgment appealed from must be reversed and judgment entered for the appellant for $6,885.36 with interest from the date that amount should have been paid. *Montgomery County v. Phoenix,* 232 Md. 58.

> *Judgment reversed, with costs, and judgment entered for appellant for $6,885.36 with interest from Sept. 17, 1962.*