## INHABITANTS OF TOWN OF ALEXANDER

v.

## MAINE BONDING & CASUALTY CO.

Supreme Judicial Court of Maine.

March 3, 1971.

William Talbot, Machias, for plaintiff.

Mitchell & Ballou by John Ballou, Bangor, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY and WERNICK, JJ.

WEBBER, Justice.

On appeal. This was an action brought by plaintiff town to recover the amounts due upon certain bonds furnished by defendant as surety for one Lewis J. Frost, deceased, in his capacity as collector of taxes for plaintiff town in the period from 1961 to 1965. Each bond was a sealed instrument and was conditioned upon the faithful discharge of all the duties and obligations of the office held by Mr. Frost.

The parties agree that because of misappropriation of funds the defendant is obligated to the plaintiff in the amount of at least $1,854.81, and if the six year statutory limitation of action be not applicable, then in the added amount of $676.18. It is further agreed that the plaintiff incurred expense for an audit in the amount of $2,718.73 but defendant contends that it should not be compelled to pay any part of this expense. The Justice below gave judgment for the plaintiff and awarded damages which included the entire shortage of $2,530.99 together with the audit expense of $2,718.73.

 Maine has no statute of limitations expressly covering actions brought upon surety bonds as such. 14 M.R.S.A., Sec. 751 provides:

"Personal actions on contracts or liabilities under seal * * * shall be commenced within 20 years after the cause of action accrues."

14 M.R.S.A., Sec. 752 provides:

"All civil actions shall be commenced within 6 years after the cause of action accrues and not afterwards, * * * except as otherwise specially provided."

In our view the present action is governed by the 20 year limitation applicable to contracts under seal. In so saying we are aware that the authorities are not in harmony on this point and a number of courts have reached what appears to be a contrary view. An examination of these cases, however, leads to the conclusion that many of them are distinguishable. Some appear to rest on the applicability of particular state statutes, others on the nature of the action brought by plaintiff and still others on facts unlike those found in the instant case.[1]

We have found no case presenting facts more closely resembling those in the instant case than does Clark County v. Bergstresser (1934) 63 S.D. 121, 257 N.W. 44, 45, 46. In that case, as here the issue was whether the action was governed by a six year limitation or by the twenty year limitation applicable to actions on sealed instruments. After reviewing cases cited as supporting a contrary view, the South Dakota Court said:

"It is difficult for us to follow the reasoning of these cases. After a careful consideration of the opinions above cited, we are still of the view stated by this court in the case of Independent School District of Brookings v. Flittie, 54 S.D. 526, 223 N.W. 728, 729: 'For breach of his official duty, the treasurer is liable upon common-law principles and under the statute, *and the surety is liable by virtue of its contract.*'

\* \* \* \* \* \*

"To hold that the sureties' liability is a liability created by statute, and for that reason the six-year statute is applicable, seems to us to ignore the very evident fact that the only claim against the surety arises on account of its contract with the county. Were it not for the contract, the county would have no claim against the surety. It follows, we believe, that this action, so far as the sureties are concerned, *is one based upon this contract of suretyship,* and that the liability of the sureties must be governed thereby." (Emphasis ours)

The West Virginia Court was of a like view. In State ex rel. Alderson v. Holbert (1950) 133 W.Va. 807, 58 S.E.2d 796, 799 the Court concluded that where the action was directly upon the bond, the 10 year limitation provided by statute in actions

1. For example, in Commonwealth, for Use of Fayette County v. Perry (1938) 330 Pa. 355, 199 A. 204 a statute imposed a special 7 year limitation on actions on bonds. The Court construed this statute as being applicable whether or not the bond was under seal. In Hatcher v. State (1935) 125 Tex. 84, 81 S.W.2d 499, however, the Court was of the view that the bond is not to be treated for limitation purposes as an independent contract between the obligee and the surety but merely as security for the obligation of the principal.

upon "an indemnifying bond taken under any statute" or upon "any * * * contract * * * under seal" was applicable. The Court said:

"It seems clear that the present action is upon the bond. To hold otherwise would effectively nullify the applicable provisions of (the statute). Such provisions should be liberally construed to the end that public officers and sureties on their bonds should be held strictly liable in accounting for public funds."

██ We find persuasive the reasoning of these cases. The present action is a direct action upon the "corporate surety bond for the faithful discharge of his duty," required by 36 M.R.S.A., Sec. 755 to be furnished by the collector upon assuming office. The Legislature could have but did not see fit to enact a special statute of limitations applicable to actions upon bonds so furnished. 36 M.R.S.A., Sec. 761 governing "(a)n action against a tax collector for failure to perfect his tax collections" has no application here. We conclude that the determination below applying 14 M.R.S.A., Sec. 751, the 20 year statute of limitations, was correct.

██ We turn now to the liability of the defendant surety for audit expense. The sequence of events becomes important. We did not have here a discovery of a shortage in the collector's office followed by an audit to determine the nature and extent of that shortage. The auditing procedure was commenced pursuant to 30 M.R.S.A., Sec. 5253 which in pertinent part provides:

"Sec. 5253. Annual postaudit

Each municipality * * * shall have an annual postaudit made of its accounts covering the last complete fiscal year by the State Department of Audit or by a qualified public accountant * * * engaged by its officers. * *

1. New postaudit. When there is dissatisfaction with a postaudit made by a public accountant as shown by a petition signed by at least 10% of the voters of a municipality * * * and filed with the State Auditor, he shall order a new postaudit to be made by his department, the expense of which shall be paid by the municipality * *."

So in this case, audits had in the past been made by a public accountant without discovery of shortages in the collector's office. The requisite number of voters of plaintiff town having registered their dissatisfaction with the postaudit procedure by petition to the State Auditor, a new postaudit was undertaken by his department. It was only in the course of this auditing procedure that the defalcations in the collector's office were first discovered. Without doubt a substantial portion of the expense of this postaudit could fairly be allocated to the determination that shortages existed in the collector's office and the ascertainment of the exact amounts thereof. Nevertheless, the State Auditor was required by law to cause additional work to be done. 30 M.R.S.A., Sec. 5253(3) provides:

"Report. After the postaudit has been completed, the auditor shall submit a report to the officers of the municipality * * *.

A. The report shall contain the following items:

(1) Letter of transmittal.

(2) Auditor's comments and suggestions for improving the financial administration.

(3) Comparative balance sheet.

(4) Analysis of surplus.

(5) Statement of departmental operations.

(6) Statement of cash receipts and disbursements, and bank reconciliation of cash balance.

(7) Statement of property valuation, assessment and collection of taxes.

(8) Statement of public debt."

An examination of the auditor's report reveals that all of these items were the subject of investigation and analysis. We note for example that the auditor identified a shortage in the accounts of the treasurer, a contingent liability in the school tuition account and a tuition overpayment to another municipality, all matters unrelated to the accounts of the collector. In satisfying the statutory requirements, the auditor necessarily provided more extensive service than would have been required merely to determine the shortage in the collector's office.

30 M.R.S.A., Sec. 5253(4) provides that "(e)ach municipality * * * shall pay the expense of its postaudit." We construe this provision as intending no more than that the State shall be guaranteed reimbursement from the town in the first instance. We do not accept the construction placed upon that provision by the defendant which would prevent the town from recovering a portion of these expenses from a bond surety in an appropriate case. In Totowa v. American Surety Co. of N. Y. (1963) 39 N.J. 332, 188 A.2d 586, the Court held in the case of a bonded tax collector that the surety was obligated to pay to the obligee "the expenses incurred in determining the amount of the shortages and reconstructing the records" because, as the Court said, "All the parties had to know that the expenses here incurred would likely follow from the principal's breach of his official duty."[2] With this holding we agree, but it does not follow that expenses unrelated to the obligations of the bond are chargeable to the surety. The Totowa Court was not dealing with general auditing expense arising from the examination of offices and accounts other than those of the tax collector. In Edmunds-Bouvier S. & L. Assn. v. New Amsterdam Cas. Co. (1957) 389 Pa. 79, 132 A.2d 181, 183, the Court was willing to allow as a "loss" payable by the surety under a bond contract "the cost of restoring to plaintiff's business records the integrity which (the principal's) manipulations destroyed," but the Court noted that "the loss provision does not comprehend a recovery of every expenditure occasioned by a dishonest act." The reasoning of the Court would seem to exclude in a situation such as is presented in the instant case the cost of auditing the general affairs of a municipality not directly related to the accounts of the bond principal.

We recognize that there may be difficulties in proof when the plaintiff seeks to meet the burden of segregating the audit expense attributable to discovery and analysis of the collector's shortages from other general postaudit expense—but defendant is entitled to no less. Absolute mathematical precision cannot be expected and is not required—but the evidence must be of such a nature that the factfinder can on the basis of facts proven and inferences drawn therefrom make a fair, just and reasonable allocation of the expenses as between those to be borne by the defendant and those which must be assumed by the plaintiff.

The entry will be

Appeal sustained. Case remanded for new hearing on damages only.

MARDEN, J., sat at argument but retired before decision was rendered.

2. See Social Security Admin., etc. v. Employers Mut. Liab. Ins. Co. (1964) 234 Md. 493, 199 A.2d 918, 922 for language indicating approval of the Totowa holding.