## The President, Directors and Company of the Bank of Brighton *vs.* Stephen Smith.

In an action against a surety who has signed the bond of the cashier of a bank, severally and not jointly, to secure the cashier's faithful performance of the duties of his office, the plaintiffs, after proving that it was the custom of the directors to have an examination of the affairs of the bank once in six months, and of the cashier to lay before them twice a week a general statement of the condition of the bank, and that on a particular day the cashier presented to the directors a statement which purported to show the condition of the bank, may introduce evidence of his admissions made at that time, in reply to questions put to him by the directors concerning such statement, that the same was false, and that he had embezzled certain sums, and forced the accounts.

If an official bond is taken in the penal sum of twenty thousand dollars, and is signed by ten sureties who bind themselves severally and not jointly in the sum of two thousand dollars each, a surety may be held liable in the full sum of two thousand dollars, if an unsatisfied defalcation of the principal exceeds that sum, although such defalcation is less than twenty thousand dollars.

Although a bond in a penal sum does not carry interest as a part of the contract, interest on the amount of the penal sum may be added by way of damages for the detention thereof, after it is the duty of a surety to pay the same.

Contract upon a bond in the penal sum of $20,000, executed by Robert N. Woodworth as principal, and the defendant and nine other persons as sureties, with condition that said Woodworth "shall well and faithfully perform and discharge all the duties which are assigned or which may hereafter be assigned to the office of cashier of the said Bank of Brighton, for and during all the time he shall serve or continue in said office, and shall faithfully observe and obey all the by-laws of said bank which now exist or which shall hereafter be made, and all the rules and regulations which now are or may hereafter be adopted by the president and directors of said Bank of Brighton, and all the lawful commands and directions of said

president and directors, and shall during the time aforesaid at all times faithfully consult and use his utmost endeavors to promote the interest of the stockholders of said bank." By the terms of the bond, Woodworth bound himself in the full sum named therein, and the several sureties in the sum of $2000 each, severally and not jointly. The writ was dated May 8, 1860.

After the former decision in this case, reported in 5 Allen, 413, the case was referred to Henry W. Paine as auditor, who made a report, the material portions of which are as follows:

" The defendant Woodworth was appointed cashier of the Bank of Brighton on the 1st of October 1853. He continued in the office from that time till the 21st of September 1858, when he was removed. It was the custom of the directors to have an examination of the affairs of the bank once in six months, and of the cashier to lay before them twice a week a general statement of the condition of the bank, showing its assets and liabilities. On the 20th of September 1858, the cashier presented to the directors a statement which purported to show the state and condition of the bank on the 18th of that month. He at first declared this to be a true statement; but, on being farther interrogated, admitted that it was not. In answer to questions put to him at that time by the directors, he stated that the liabilities of the bank were greater by ten thousand dollars and its assets less by ten thousand dollars than appeared by the statement presented; that he had forced the account; that there were two of his memorandum checks then in the teller's drawer, one for four thousand dollars, the other for five hundred, which he had given for money which he had taken and appropriated to his own use. He further stated that as cashier of the bank he had drawn two checks on the Fulton Bank, New York, on time, each for the sum of ten thousand dollars; that these checks had been discounted by the Faneuil Hall Bank, Boston; that he had received and appropriated to his own use the proceeds of these checks, and that they were then outstanding.

" The defendant seasonably objected to the admission of these

statements as evidence against him; but the objection was overruled.

" It was proved that on the 8th of June 1858 the cashier began to force the accounts by changing the figures in the books of the bank, and that he continued to do this while he remained in office ; and that he abstracted of the funds of the bank for his own use the sum of twenty thousand dollars. The accounts were forced for the purpose of concealing this defalcation. It was not proved when or how this sum was abstracted, though it did appear that there had been no forcing previous to the 8th of June 1858.

" It was proved that the cashier had been for a long time in the habit of taking money from the drawer of the teller and leaving with the teller his memorandum check for the amount. At one time, some eighteen months before he was removed from office, the teller had his checks to the amount of fifteen thousand dollars. But it was not proved that the directors were aware of this habit of the cashier. In the statements laid before the directors these checks appeared as cash.

" On the 20th of September 1858 there were in the teller's drawer the two checks before mentioned, one for four thousand, the other for five hundred dollars. These were given for money which the cashier had appropriated to his own use. On one of the books of the bank an account was opened under this head : ' Deficiency of R. N. Woodworth.' In this account Woodworth is charged, September 23d 1858, with $24,500 ; and he is credited, October 13th 1858, with $7550 ; December 21st 1858 with $3000 ; September 20th 1859 with $200. The several sums so credited were actually received from Woodworth by the bank. On the 21st of September 1858, certain evidences of property were turned over by Woodworth to the directors ; but they were of no value and nothing was realized from them.

" It was proved that Woodworth had been in the habit for nearly a year of drawing, as cashier of the bank, time drafts on the Fulton Bank, New York. These drafts in the aggregate amounted to from fifty to one hundred thousand dollars. In 1857 one of the directors had a note discounted at the bank,

and received instead of money a certain draft on the Fulton Bank, on time, to send into one of the United States. A man by the name of Squires obtained discounts at the bank during a period of some eight weeks, beginning in October 1857. Instead of money he received in some instances from the cashier time drafts on the Fulton Bank. They were from six to ten in number, and amounted in the aggregate to from ten to twenty thousand dollars. Money was hard when these drafts were made. They were drawn with the knowledge of the president, as were also two other time drafts. The bank had not at the time of the drawing any of these drafts the funds to meet them in the Fulton Bank. Previous to the 21st of September 1858, Woodworth as cashier drew two other drafts on the Fulton Bank on time. These he procured to be discounted by the Faneuil Hall Bank. They were each for the sum of ten thousand dollars. They did not mature till after the 21st of September. The Bank of Brighton refused to pay them. A suit was brought which was contested. Judgment was rendered in November 1861 for the amount of the two drafts, interest and costs of suit. This judgment was satisfied by the bank. The proceeds of these drafts never came to the bank, but were appropriated by the cashier."

The case came on for trial before *Lord*, J., without a jury, and no evidence was offered except the auditor's report. The defendant requested the court to rule as follows:

" 1. That the auditor erred in admitting testimony of the declarations of the principal, not a party to the suit, against the objection of the defendant, and therefore that the report must be recommitted with directions to exclude such declarations and admissions as incompetent against the surety.

" 2. That upon the facts found by the auditor the plaintiffs were only entitled to nominal damages.

" 3. That upon the facts found the plaintiffs were only entitled to recover, if anything, one tenth part of $13,750, with interest thereon from September 23d 1858.

" 4. That it appearing by the facts reported that the president and directors of the plaintiffs' bank had directed and authorized

the cashier to engage in the unlawful business of drawing drafts on time on the Fulton Bank, the plaintiffs having no funds to meet said drafts when drawn, the defendant is not liable for the proceeds of any such drafts drawn and appropriated by the cashier."

The judge declined to recommit the report or to rule as requested, but did rule upon the facts reported that the plaintiffs were entitled to recover the whole amount of the defendant's penalty, $2000, and interest thereon from September 23d 1858. The defendant alleged exceptions.

*J. G. Abbott,* for the defendant. The declarations and admissions of the cashier were incompetent. This defendant has a right, in a suit in which he is the sole defendant, to require the plaintiffs to prove the cashier's unfaithfulness by competent evidence; not merely that the cashier has said that he was unfaithful. In *Chelmsford Co.* v. *Demarest,* 7 Gray, 1, admissions of the principal, made after he had given up his office, were rejected; but the ground of the rejection was, that he was not a party to the suit. The fact that the admissions were made while the principal remained in office, if narratives of what he had done in the past, is immaterial. He might be called as a witness. The declarations and admissions in this case were offered to show that he had embezzled money at some time before. This fact cannot be so proved. If it is said that the cashier was bound by his bond to answer questions that might be put to him in regard to his official conduct, the answer is, that he did his duty in this respect. He did answer the questions which were put to him. If it is further said that these answers may be taken against this defendant, that position is denied. By answering the questions he fulfilled the bond, in this respect. But the statements which he made in his answers, as to his past acts, are not competent against this defendant. *Boston Hat Manufactory* v. *Messinger,* 2 Pick. 223. *Evans* v. *Beattie,* 5 Esp. R. 26. *Smith* v. *Whittingham,* 6 C. & P. 78. *Ward* v. *Suffield,* 5 Bing. (N. C.) 381. *Jaggers* v. *Binnings,* 1 Stark. R. 64. *Bacon* v. *Chesney,* Ib. 192. *Longenecker* v. *Hyde,* 6 Binn. 1.

It was erroneous to add interest to the penalty of the bond

No interest can be given upon a penalty. When a sum is agreed upon as a penalty, that is the limit to which the liability of the obligor can extend. By Rev. Sts. *c.* 100, § 8, judgment is to be rendered for the penalty of a bond, not for the penalty with interest. By § 9, the court after judgment are to award execution for so much of the penal sum as shall be found due in equity and good conscience. By §§ 10, 11, if further breaches occur, the court may award execution, until the whole of the penalty is exhausted. This whole subject is thus provided for by legislation. See also *Wilde* v. *Clarkson*, 6 T. R. 303; *McClure* v. *Dunkin*, 1 East, 436; *Tew* v. *Winterton*, 3 Bro. C. C. 489; *Clarke* v. *Abingdon*, 17 Ves. 106, *note*; *Ex parte Mills*, 2 Ves. Jr. 295; *Fairlee* v. *Lawson*, 5 Cow. 424; *Clark* v. *Bush*, 3 Cow. 158.

The whole amount for which the sureties can be held liable is the balance left after deducting the amount received from the principal, $10,750, from the sum taken by him, $24,500; that is, $13,750 and interest. The amount subsequently received on the time drafts cannot be included, because the habit of drawing such drafts was known to the president and at least two of the directors, and assented to by them, and was illegal under Rev. Sts. *c.* 36, §§ 57–63. *Dedham Bank* v. *Chickering*, 4 Pick. 314, 338, 339. If this position is correct, each of the ten sureties should be held liable for only one tenth part of the whole sum due. The bond is several and not joint. The court is to determine what sum is due in equity and good conscience.

*B. F. Thomas & G. A. Somerby*, for the plaintiffs, cited, as to the evidence of the cashier's admissions, *Lexington & West Cambridge Railroad* v. *Elwell*, 8 Allen, 371, and cases cited; *Hunt* v. *Bridgham*, 2 Pick. 581; *Fenner* v. *Lewis*, 10 Johns. 38; *Lyman* v. *Lull*, 20 Verm. 349; *Bryant* v. *Crosby*, 36 Maine, 562; *United States* v. *Cutter*, 2 Curt. C. C. 617; as to the allowance of interest on the penalty, *Harris* v. *Clap*, 1 Mass. 308; *Pitts* v *Tilden*, 2 Mass. 118; *Warner* v. *Thurlo*, 15 Mass. 154; *Brainard* v. *Jones*, 18 N. Y. 35; *Carter* v. *Thorn*, 18 B. Monr. (Ky.) 613; *Wood* v. *Barstow*, 10 Pick. 368; *Hunt* v. *Bridgham*, above cited *Dole* v. *Young*, 24 Pick. 250; *Oxford Bank* v. *Haynes*, 8 Pick

423; *Williams* v. *American Bank*, 4 Met. 317; as to the defend ant's liability for the avails of the time drafts embezzled by the cashier, *United States* v. *Cutter*, 2 Curt. C. C. 617; *Amherst Bank* v. *Root*, 2 Met. 522; *Minor* v. *Mechanics' Bank*, 1 Pet. 46; *Dedham Bank* v. *Chickering*, 4 Pick. 314; *Faneuil Hall Bank* v. *Bank of Brighton*, 16 Gray.

COLT, J. This is an action against the defendant as surety in a bond conditioned that one Woodworth, the principal, should faithfully perform and discharge all the duties which were assigned, or which might thereafter be assigned, to the office of cashier of the plaintiffs' bank, and faithfully observe and obey all the by-laws of said bank, and all the rules and regulations which were then or might thereafter be adopted, by the president and directors of said bank. It appears by the report of the auditor, upon which judgment was rendered by the superior court, that it was the custom of the directors to have an examination of the affairs of the bank once in six months, and of the cashier to lay before them twice a week a general statement of its condition, showing its assets and liabilities. On the 20th of September 1858, Woodworth still filling the office of cashier, presented to the directors a written statement, which purported to show the condition of the bank on the 18th of that month. In answer to questions put to him by the directors on that occasion, Woodworth made certain verbal admissions, and stated certain facts, showing that the account as then rendered was a false exhibit of the affairs of the bank. The auditor admitted these verbal statements and admissions as evidence, and the defendant objects that they were improperly received. We think this objection cannot be sustained. The statements were made in the course of the duty for the faithful performance of which by the cashier the defendant had bound himself. They were made while the cashier was still in office, they accompanied and explained an official act, and must be regarded as part of the *res gestæ.* They were not like declarations made by the principal subsequent to the act to which they related, and out of the course of his official duty. The surety is indeed to be held responsible only for the actual conduct of the party, and not for

what he may say he has done; his mere narrations of past trans-actions, though made while still in office, may not be competent evidence to prove the truth of the facts stated in an action against the surety alone, on a bond which was not in its nature joint, and while the principal may be called as a witness. But in this case his written statement and his accompanying verbal explanations are in the nature of written and verbal acts, and constitute a part of his official conduct. They are like entries made in the course of duty, and are as such admissible in evidence though the party making them is living and competent to testify. It does not appear in this case to be necessary to hold that these statements were competent to establish the fact of the misappropriation of the funds of the bank at some time before. The objection to their admission was general, and the exception cannot be sustained if it appears that they were competent for any limited purpose. And for the purpose of showing the unfaithful performance of the official act they accompanied, as part of a chain of evidence tending to establish a breach of the condition of the bond, they were competent. *Middleton* v. *Melton,* 10 B. & C. 317. 1 Greenl. Ev. § 115. *Amherst Bank* v. *Root,* 2 Met. 522. *Chelmsford Co.* v. *Demarest,* 7 Gray, 1. *Lexington & West Cambridge Railroad* v. *Elwell,* 8 Allen, 371.

The defendant further claims that the sureties of the cashier are only liable for $13,750, the amount of the ascertained deficit, exclusive of the two drafts on time drawn on the Fulton Bank and that each of the ten sureties are liable for only one tenth of that sum, and not each for the whole penalty. By the terms of the obligation which the defendant entered into, he with ten others bound themselves severally and not jointly as sureties, each in the sum of $2000, for Woodworth the principal. And the sufficient answer to this claim is, that so long as the unsatisfied defalcation of the cashier exceeds the amount for which this defendant agreed to be held, the plaintiffs may pursue him and the other sureties, and recover judgments against each to the extent of their several liabilities, though only one satisfaction on execution can be had upon the judgments so obtained. And

this consideration renders it needless to inquire whether the sureties are liable, in addition to the sum above named, for the two drafts which it is alleged were illegally drawn by the cashier with the approbation of the president and directors of the bank.

The remaining point for consideration is the ruling of the superior court, that damages should be awarded for the full penalty of the bond with interest from September 23d 1858. It appears that at the date named the amount of the defalcation was ascertained and charged to the cashier on the books of the bank. The defendant claims that judgment can only be rendered for the penalty of the bond without interest. In suits against sureties the limitations which by the contract they make to their liability are to be strictly upheld. It may be that as between the principal and the plaintiffs in this case interest from the time of the misappropriation of the funds intrusted to him might be recovered of the principal as constituting a part of the damages occasioned by his misconduct. Or if the extent of the defalcation and interest so added had in this case fallen short of, or did not exceed, the penalty in the defendant's bond, such interest might be taken into account in ascertaining for what portion of the penalty judgment should be rendered. But the measure of the principal's liability ceases to operate as the rule against the surety when that liability exceeds the penalty agreed on. The surety has a right to say, I agreed to be liable for such losses as may be occasioned by the principal only to the extent fixed, although that loss is in part made up of interest on money wrongfully taken. But it does not follow that the surety can in no case be held liable for interest upon the penalty. The true rule seems to be that the surety may be liable for interest on the penalty, not as part of the debt for which he originally became responsible, but as damages for its detention. There is a plain distinction to be observed between cases in which interest is given by way of damages and those in which it constitutes a part of the debt, as it does in contracts in which there is a promise to pay interest. As a general rule, in all cases in which a debtor is in default for not paying money in pursuance of his contract, he is liable for interest thereon from

the day of his default, and when a demand is necessary to put the debtor in fault interest is to be given only from the demand. Where interest is not stipulated for as part of the contract, it is given by way of damages for the detention of the money. If the surety becomes charged by the default of the principal for the amount of the penalty or any portion of it, it is his duty to pay the same on demand; and if he neglects or refuses, the general principle above stated applies, and the interest is added by way of damages for his own default, not as enlarging in any degree his liability for the misconduct of the principal.

The liability of an insurer upon a policy of insurance illustrates the principle applicable here. The contract of an insurer is a contract of indemnity. It is an engagement to pay an amount not exceeding a given sum on the happening of certain losses; and yet interest is recoverable upon the whole amount insured, after proof of loss and demand of payment. *Oriental Bank* v. *Tremont Ins. Co.* 4 Met. 1.

The case of *Harris* v. *Clap*, 1 Mass. 308, cited by the plaintiffs, seems to stand well upon this doctrine. It was an action against principal and surety in an arbitration bond for the penal sum of $5000, conditioned to pay the award within one hundred and twenty days after the making of it. The amount awarded was less than the penalty, but with interest added from the expiration of the one hundred and twenty days exceeded it. In point of fact the suit on the bond was commenced but a short time after the expiration of the time of payment. And upon a careful examination of the several opinions given, it appears that a majority of the court intended to affirm the doctrine stated by Sewall, J., in these words: " In this suit the plaintiff cannot recover beyond the penalty of this bond and the damages for the detention of it, which may be considered as legally demanded at the service of the writ. The penalty and interest from the demand must be the measure of the judgment; not exceeding, however, the sum awarded, and interest on it from the time of payment according to the condition of the bond And the judgment must be entered for that amount, viz., $5000 as recovered for debt, and the residue as damages for the detention."

In *Warner* v. *Thurlo*, 15 Mass. 154, where it was held that in a suit upon a replevin bond damages may be recovered beyond the penalty so as not to exceed interest on the penalty from the commencement of the action, the court say, with *Harris* v. *Clap* in mind, " Further than that no case decided in this commonwealth will be found to have gone." The decisions of this court, therefore, justify the allowance of interest when the surety is in fault, though the judgment should thereby be made to ex-. ceed the penalty.

The case of *Brainard* v. *Jones*, 18 N. Y. 35, states that the same doctrine is now recognized by the courts of New York, Comstock, J. remarking : " The rule has often been laid down in general terms that sureties are not liable beyond the penalty of the bond in which their obligation is contained. But, on a careful examination of the reason and justice of the rule, it will be found inapplicable to a question of interest accruing after they are in default for not paying according to the condition of the bond. There is a plain distinction which has sometimes been lost sight of, and consequently some confusion and contradiction will be found in the cases on this subject. Where the sum claimed becomes a debt actually due from them and they continue in default, the question, properly considered, is one of damages for the delay."

In this case, then, interest is to be added to the penalty as damages for the detention for such time as the case shows the defendant to have been in fault for its non-payment. His undertaking by its express terms was not that of a joint promisor with Woodworth, and he cannot be said to have been in fault until notice that he had become liable, and demand for payment. No notice was given or demand made until the commencement of this action ; and interest ought not to have been allowed before the date of the writ. To this extent the defendant's exceptions are sustained, but the plaintiffs may remit of the amount for which execution is to issue all except $2000, with interest from the date of the writ, and take execution for that amount.