EMPIRE OF CAROLINA, INC., PLAINTIFF v. CONTINENTAL CASUALTY COMPANY, DEFENDANT

No. 917SC410

(Filed 17 March 1992)

1. Insurance § 6.1 (NCI3d) — fidelity insurance — payment of interest on money stolen — not required

The language of a fidelity insurance policy did not require defendant to pay the lost interest on $278,759.51 stolen by plaintiff's former president where defendant agreed to pay, under this policy, for loss of money, securities and other property sustained through the fraudulent or dishonest act or acts of an employee; plaintiff's former president misappropriated $502,201.99 from plaintiff, $278,759.51 during the policy periods; the SEC ordered the former president to disgorge the $502,201.99 and returned it to plaintiff; and plaintiff demanded interest on the $278,759.51 under the fidelity insurance policy. The policy specifically provides that the term "loss" does not include "damage" to money.

**Am Jur 2d, Fidelity Bonds and Insurance § 76.**

EMPIRE OF CAROLINA v. CONTINENTAL CASUALTY CO.

[105 N.C. App. 675 (1992)]

**2. Rules of Civil Procedure § 56.1 (NCI3d) — summary judgment — incomplete discovery — unrelated issue**

There was no prejudicial error in the granting of summary judgment on the issue of whether an insurance policy provided coverage while discovery was incomplete because the incomplete discovery related to defendant's affirmative defenses and would not have created any genuine issue of material fact regarding whether the policy provided coverage.

**Am Jur 2d, Summary Judgment § 27.**

APPEAL by plaintiff from order entered 25 January 1991 in EDGECOMBE County Superior Court by *Judge Frank R. Brown.* Heard in the Court of Appeals 20 February 1992.

*Womble Carlyle Sandridge & Rice, by Thomas L. Nesbit, for plaintiff-appellant.*

*Petree Stockton & Robinson, by James P. Cain and Katherine E. Flanagan, for defendant-appellee.*

GREENE, Judge.

Plaintiff appeals from an order entered 25 January 1991 granting the defendant's motion for summary judgment.

Viewed in the light most favorable to the plaintiff, the evidence produced at the summary judgment hearing tends to show the following relevant facts: On 11 April 1979, the plaintiff, a public corporation engaged in manufacturing and marketing children's toys, purchased and the defendant issued a "Comprehensive Dishonesty, Disappearance, and Destruction Policy" of insurance. Under this fidelity insurance policy, the defendant agreed to pay to the plaintiff for "Loss of Money, Securities and other property which the Insured shall sustain" through the fraudulent or dishonest act or acts of an employee. The limit of the defendant's liability under this policy was $500,000 per officer. From 1977 through 1982, the former president of the plaintiff misappropriated $502,201.99 from the plaintiff. The former president stole $278,759.51 of the total amount during the policy periods.

On 6 August 1982, the plaintiff notified the defendant that it had sustained a loss of money resulting from fraudulent or dishonest acts of an employee. The defendant granted the plaintiff an extension of time within which to submit a Proof of Loss, and

the plaintiff submitted the required document on 1 April 1983. In the Proof of Loss, the plaintiff explained that on 31 August 1982 the Securities and Exchange Commission (SEC) had issued a Formal Order of Investigation in connection with its former president's dishonest acts. In 1984, the SEC sued the plaintiff's former president for his alleged violation of federal securities laws in connection with his misappropriation of money from the plaintiff, and on 8 April 1987, U.S. District Judge Pierre N. Leval granted the SEC's motion for summary judgment against the former president and ordered him to "disgorge" to the SEC the $502,201.99 he had misappropriated from the plaintiff. *SEC v. Benson*, 657 F. Supp. 1122, 1134 (S.D.N.Y. 1987).

On 9 November 1987, the plaintiff requested that the defendant "recognize coverage" for its $278,759.51 loss. Because the defendant believed that the plaintiff's Proofs of Loss were inadequate, the defendant refused to recognize the claim. On 23 February 1988, the plaintiff again demanded that the defendant recognize coverage for its loss. On 22 September 1988, however, the former president complied with the district court's order, and thereafter, the SEC returned the money to the plaintiff. On 1 March 1989, the plaintiff informed the defendant that it had received the $502,201.99 previously stolen by its former president. Furthermore, the plaintiff informed the defendant that under the terms of the fidelity insurance policy it was entitled to interest on the $278,759.51 stolen by its former president during the policy periods. Computed from 1 January 1981 until 22 September 1988, the plaintiff determined that the lost interest amounted to more than $560,000, and because that amount exceeded the policy limits, the plaintiff demanded that the defendant pay to the plaintiff the $500,000 limit of liability under the policy.

The defendant did not comply with the plaintiff's demand, and on 29 December 1989, the plaintiff filed an action against the defendant. The defendant answered the complaint denying that "[t]he loss of potential income or interest is a loss covered under the terms of the policy." The defendant also raised various affirmative defenses to the plaintiff's action including the statute of limitations, doctrine of laches, and failure to mitigate damages. On 19 November 1990 and 30 November 1990, the plaintiff and the defendant, respectively, filed motions for summary judgment. The plaintiff also filed on 19 November 1990 a motion to compel discovery of material relating to the defendant's affirmative defenses. On

25 January 1991, the trial court granted the defendant's motion, denied the plaintiff's motion, and dismissed the plaintiff's action.

---

[1]   The dispositive issue is whether the language of the fidelity insurance policy requires the defendant to pay the lost interest on the $278,759.51 stolen by the plaintiff's former president.

"[A]n insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." *Fidelity Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986). "Our courts have a 'duty to construe and enforce insurance policies as written, without rewriting the contract or disregarding the express language used. . . . The duty is a solemn one, for it seeks to preserve the fundamental right of freedom of contract.' " *Kruger v. State Farm Mut. Auto. Ins. Co.*, 102 N.C. App. 788, 789, 403 S.E.2d 571, 572 (1991) (citation omitted). The fidelity insurance policy provided that the defendant was to pay to the plaintiff for "Loss of Money, Securities and other property which the Insured shall sustain" through the fraudulent or dishonest act or acts of an employee. This is the language this Court must construe. *See Thomas & Howard Co. v. American Mut. Liab. Ins. Co.*, 241 N.C. 109, 113, 84 S.E.2d 337, 340 (1954) (fidelity bond "subject to rules of construction applicable to insurance policies generally"). Because the defendant chose this language, we must resolve any ambiguity in the language in favor of the plaintiff and against the defendant. *Wachovia Bank & Trust Co. v. Westchester Fire Ins. Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970).

The plaintiff argues that the trial court erroneously granted the defendant's motion for summary judgment because the phrase "loss of money" as used in the policy covers not only the principal amount stolen but also the lost interest on the $278,759.51 until the plaintiff's former president returned it. This argument assumes, however, that the term "money" as used in the policy is ambiguous. It is not. When an insurance policy defines a term, the definition in the policy controls the meaning of the term. *C.D. Spangler Constr. Co. v. Industrial Crankshaft & Eng'g Co.*, 326 N.C. 133, 142, 388 S.E.2d 557, 563 (1990). The policy defines "money" as "currency, coins, bank notes and bullion, and travelers checks, register checks and money orders held for sale to the public." Interest on stolen currency, coins, etc. is not included in the definition of "money." Accordingly, the defendant's contractual obligation under this unam-

EMPIRE OF CAROLINA v. CONTINENTAL CASUALTY CO.

[105 N.C. App. 675 (1992)]

biguous fidelity insurance policy was limited to compensating the plaintiff for the principal amount stolen by the plaintiff's former president.

Contrary to the plaintiff's argument, the policy in question is distinguishable from the policies in *American Ins. Co. v. First Nat'l Bank*, 409 F.2d 1387, 1391-92 (8th Cir. 1969) and *Social Sec. Admin. v. Employers Mut. Liab. Ins. Co.*, 199 A.2d 918, 921 (Md. 1964). In *American*, the defendant had issued a banker's blanket bond which indemnified the plaintiff from "any loss" the plaintiff sustained as a result of loans made by the plaintiff on the basis of forged signatures, and the plaintiff, a bank, made such loans which proved to be uncollectable. *Id.* at 1388-89. The court held that although the policy did not make any provision for payment of interest, the policy provisions indemnifying the plaintiff from "any loss" were "sufficiently broad" to cover loss of use of money. *Id.* at 1391-92. In the present case, however, the policy language is narrow in that it does not cover "any loss" but only the "loss of money." This narrow policy language is also distinguishable from the policy language in *Social Sec.*, 199 A.2d at 921. The policy in that case indemnified the plaintiff against " 'direct loss of, or damage to' money resulting from dishonesty of an employee." *Id.* The court held that interest on money embezzled by an employee was a " 'direct loss of, or damage to' " the money embezzled and was therefore covered by the policy. *Id.* In the present case, however, the policy specifically provides that the term "loss" does not include "damage" to money. Accordingly, this Court may not construe "loss of money" as meaning "damage to the money," i.e., interest, stolen by the plaintiff's former president.

[2] Furthermore, we recognize that ordinarily a trial court may not enter summary judgment until discovery is complete, *Moore v. Crumpton*, 306 N.C. 618, 628, 295 S.E.2d 436, 443 (1982), and that in this case, the trial court entered summary judgment for the defendant before the plaintiff had completed its discovery. The incomplete discovery, however, was related to the defendant's affirmative defenses, not to whether the fidelity insurance policy provided coverage for the lost interest. Therefore, contrary to the plaintiff's argument, any error in the trial court's entry of summary judgment was harmless because the incomplete discovery related to the defendant's affirmative defenses and therefore would not have created any genuine issue of material fact regarding whether the policy provided coverage for the lost interest.

Because the fidelity insurance policy does not provide coverage for the lost interest, the trial court's order of summary judgment for the defendant is

Affirmed.

Judges JOHNSON and COZORT concur.