2014 VT 115

## Town of Ira v. Vermont League of Cities and Towns — Property and Casualty Intermunicipal Fund, Inc.

[109 A.3d 893]

No. 13-373

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Crawford, JJ.**[1]

Opinion Filed October 31, 2014

---

[1] Justice Crawford was present for oral argument, but did not participate in this decision.

*Patrick J. Bernal* of *Witten, Woolmington, Campbell & Bernal, P.C.,* Manchester Center, for Plaintiff-Appellee/Cross-Appellant.

*Kaveh S. Shahi* of *Cleary Shahi & Aicher, P.C.,* Rutland, for Defendant-Appellant/Cross-Appellee.

¶ 1. **Dooley, J.** Plaintiff Town of Ira brought this action to recover from its insurer, Vermont League of Cities and Towns — Property and Casualty Intermunicipal Fund, Inc. (PACIF), certain losses related to the embezzlement of town funds by the Town's former treasurer. On summary judgment, the trial court found that the Town was entitled to interest on the embezzled amount up to the policy limit and that this amount mooted the Town's claim for audit and attorney's fees, as well as insurer's counterclaims to recoup certain sums already paid. It also granted judgment to insurer on the Town's claim that insurer acted in bad faith by not paying for all of the items it claimed. We affirm.

¶ 2. The Town purchased a policy from insurer that included coverage of losses due to employee embezzlement. The coverage limit was $500,000. In November 2009, an audit revealed to the Town that its long-time elected treasurer had embezzled over $300,000 in funds from town accounts. The audit also reported that the lost interest on the embezzled funds totaled $346,427. For these amounts and others, the Town obtained a judgment against the former treasurer for $1,157,883. The Town sought the coverage limit of $500,000 from insurer. Insurer paid only a part of that amount, essentially reflecting funds actually taken and not including interest on that amount. The Town sued in this action for the difference. On cross-motions for summary judgment, the trial court ruled for the Town, holding specifically that the Town could recover lost interest in addition to the amount embezzled.

¶ 3. The insurance policy involved is a fidelity policy, which indemnifies for certain criminal conduct. Agreement H, paragraph a, of Section IV of the policy, labeled as a "commercial blanket bond,"[2] provides in pertinent part:

> The Fund agrees, subject to limitations, terms and conditions of this Coverage, to indemnify the Named Member against any loss of money or "other property," which the Named Member shall during the term of this Coverage sustain or discover it has sustained through . . . embezzlement . . . committed by any one of its officials or Employees, acting alone or in collusion with others.

The Town argues that the "loss of money"[3] that it "sustained through embezzlement" includes not only the amount embezzled but also the "time value of money," that is, the interest lost because the money was not available to invest or hold to earn interest. The insurer argues that the language covers only the amount actually embezzled, at least for an insured that is not in the business of investing or lending money.

¶ 4. The trial court sided with the Town, noting generally that the policy language "is at least broad enough to create an ambiguity as to whether interest . . . [is] covered" and that the ambiguity "must be construed in favor of coverage." The court amplified:

> PACIF's interpretation of contract so as to exclude interest the embezzled funds could have earned from the definition of "loss of money . . . sustained through . . . embezzlement" is overly restrictive. It ignores that prejudgment interest is designed to make a plaintiff whole. . . . Interest does that by adequately compensating the plaintiff for the time value of money, a fundamental

---

[2] A blanket bond is actually a contract of indemnity insurance. See W. Haug, *The Commercial Blanket Bond Annotated* 7 (Am. Bar Ass'n 1985). Although it started as an individual bond, it is now a form of insurance that provides fidelity coverage. *Id.* at 1. The term "blanket" is used because the blanket bond is said to cover all employees like a blanket. *Id.* at 4.

[3] The Town argues primarily that the loss of the return on the money embezzled is loss of money and not loss of other property. We have analyzed it as presented to us.

economic concept. . . . As such, interest[4] qualifies as a "loss of money . . . sustained through . . . embezzlement" under the policy.

¶ 5. ■ ■ In evaluating the trial court decision, we start with the principles under which we evaluate coverage claims.[5] Interpretation of an insurance policy,[6] like other contracts, involves the resolution of a question of law and, therefore, our review is plenary and nondeferential. *Coop. Ins. Cos. v. Woodward*, 2012 VT 22, ¶ 8, 191 Vt. 348, 45 A.3d 89. We give effect to the plain meaning of the terms of the policy if the meaning is unambiguous. *Id.* ¶ 9. We give policy language a "practical, reasonable, and fair interpretation, consonant with the apparent object and intent of the parties." *Bradford Oil Co. v. Stonington Ins. Co.*, 2011 VT 108, ¶ 10, 190 Vt. 330, 54 A.3d 983 (quotation omitted). We do, however, construe policy language in favor of the insured where there is ambiguity. *Id.*; *Trinder v. Conn. Attorneys Title Ins. Co.*, 2011 VT 46, ¶ 11, 189 Vt. 492, 22 A.3d 493. Although here we are dealing with a fidelity policy, rather than a liability policy, we see no reason why these principles should not apply in this instance. See 11 S. Plitt et al., Couch on Insurance § 160:19 (3d ed. 2014) ("[B]onds and contracts which guarantee the fidelity of employees, . . . if written for profit and in the course of a business undertaken therefor, are essentially insurance contracts rather than contracts of strict or pure suretyship, and are to be construed as insurance contracts[.]"); *Southside Motor Co. v. Transamerica Ins. Co.*, 380 So. 2d 470, 471 (Fla. Dist. Ct. App. 1980) (applying liberal construction in favor of insured to fidelity bond).[7]

---

[4] The trial court held that the amount of interest should be calculated at the statutory rate, which is 12%. See 9 V.S.A. § 41a(a). Although insurer has contested whether prejudgment interest should be included in the amount it is obligated to pay, it has not contested the rate of interest used by the trial court. Thus, we do not consider whether use of the statutory rate was proper.

[5] The parties have skirmished over who has the burden of persuasion in this case. Since the question we must resolve is purely one of law, the placement of the burden of persuasion is of no significance.

[6] Although insurer is not an insurance company, it concedes that the rules for construction of insurance policies apply.

[7] We recognize that there is an argument that the rule of construction of ambiguous terms to favor the insured should not apply to fidelity insurance because the terms are actually negotiated between insurers and trade associations.

¶ 6. ■ We also start with an understanding of what is at issue. As discussed in the early leading case of *Bank of Brighton v. Smith*, 94 Mass. (12 Allen) 243 (Mass. 1866), there are two types of prejudgment interest involved in this situation. The first is interest "from the time of the misappropriation of the funds intrusted to [the employee] . . . as constituting a part of the damages occasioned by his misconduct." *Id.* at 251. In addition, the surety may be liable for a second type of interest — that on the amount owed under the surety agreement:

> If the surety becomes charged by the default of the [employee] for the amount of the [bond] or any portion of it, it is his duty to pay the same on demand; and if he neglects or refuses, the general principle . . . applies, and the interest is added by way of damages for his own default, not as enlarging in any degree his liability for the misconduct of the [employee].

*Id.* at 252. The court differentiated the two types of interest for a reason different from why we do so in this case — there, to determine whether the coverage limit of the bond applies to each type of interest.[8] *Id.*; see also *Cambridge Trust Co. v. Commercial Union Ins. Co.*, 591 N.E.2d 1117, 1121-22 (Mass. App. Ct. 1992) (same).

¶ 7. This appeal involves only the first type of interest, with the one exception being insurer's challenge that the judgment improperly includes interest on interest. Insurer's main argument is that the policy does not allow recovery of the first type of interest. We have not in the past addressed this question of whether the covered loss incurred by the insured under a fidelity policy includes interest on the amount of money stolen by an employee,

See M. Fenice & A. Friedman, *The Rule of Contra Proferentem and the Interpretive Impact of Making Changes to Standard Fidelity Bond Forms*, 12 Fidelity L.J. 125, 138-43 (2006). The cases that are consistent with this argument are generally financial institution bond cases where the history of such negotiations is clear and transparent. See *id.* at 139-42. We do not agree that the argument should apply here where there is no claim of such history of negotiation.

[8] The trial court in this case awarded interest of the second type — that is, for the period after the Town's demand for the payment of the full amount of the policy limit — and necessarily, because the court awarded recovery up to the policy limit, the interest of the second type brought the overall recovery above the policy limit. Except as noted in the text, this decision is not contested and is not before us.

although courts in many jurisdictions have addressed it and the decisions are decisively, but not unanimously, in support of the Town's position. There appear to be two primary rationales for this rule. Two New Jersey Supreme Court decisions reflect these rationales. The first decision is *Borough of Totowa v. American Surety Co. of New York*, 188 A.2d 586 (N.J. 1963), a similar case in which a municipal treasurer embezzled funds and the municipality sought interest on the funds taken from the date of the embezzlement. In affirming an award of interest, the court reasoned:

> We think the surety on an official bond should answer for the same damages for which the principal obligor is liable. The surety underwrites the principal's behavior; it vouches for him. The liability of the principal and the surety upon the bond is in terms one and the same. We see no reason to interpolate a limitation confining the surety's liability to a part of the total wrong of the principal obligor.
>
> . . . .
>
> The loss of use of the moneys was part and parcel of the injury the unfaithful official inflicted upon the Borough. When the surety made it[s] engagement it knew that if the principal obligor breached the condition of the bond, the ensuing loss would include the loss of the use of the moneys misappropriated as well as the moneys themselves. Unless the Borough receives reimbursement for both principal and interest, it will not be made whole. It will suffer a loss in the face of the surety's promise that it would not.

*Id.* at 595.

¶ 8. ■ The second decision is *In re Estate of Lash*, 776 A.2d 765 (N.J. 2001), which involved misappropriation of funds by an estate administrator and recovery by the estate from the issuer of an estate administration bond. The court characterized the rule that the surety is liable for the same damages as the fiduciary as a presumption. *Id.* at 770 ("[U]nless there is a bond provision to the contrary, the surety's liability is coextensive with the principal's liability[.]"). It held that the lost interest was damages payable under the bond. *Id.* at 774; accord *Hack v. Am. Sur. Co.*,

96 F.2d 939, 946 (7th Cir. 1938) ("The surety undertook to answer for the default of its principals . . . . The measure of its liability is the liability of the bank's officers."); *Soc. Security Admin. v. Emp'rs Mut. Liab. Ins. Co.*, 199 A.2d 918, 921-22 (Md. 1964); *Edmunds-Bouvier Savs. & Loan Ass'n v. New Amsterdam Cas. Co.*, 132 A.2d 181, 183-85 (Pa. 1957). We recognize that fidelity insurance grew out of suretyship law and is not liability insurance. For this reason, we are particularly persuaded by the holding of *Estate of Lash* that we should presume that the employer's recovery from the insurer should be the same as that from the offending employee but should enforce a contrary provision in the policy if there is one. On the point that paying back only the principal does not make the insured whole, one court noted: "We do not believe that the defendant insurer is in the habit of keeping its reserves for losses hidden in the bottom of a sugar jar in the kitchen. They are put out at interest." *Bank of Huntingdon v. Smothers*, 626 S.W.2d 267, 271 (Tenn. Ct. App. 1981).

¶ 9. The decisions also rely on the breadth of language of the coverage in the fidelity policy and the rule that in case of ambiguity insurance policy provisions are interpreted in favor of the insured. A good example of this analysis is in *American Insurance Co. v. First National Bank*, 409 F.2d 1387 (8th Cir. 1969), which involved fraudulent bank loans and the extent of coverage by a fidelity policy. In finding that the bank could recover interest on the amount loaned, the court relied particularly on the policy language, which indemnified the bank for " 'any loss' sustained in connection with transactions covered by the bond." *Am. Ins. Co.*, 409 F.2d at 1391. The court stated that "when the ordinary rules for construction of contracts are applied, the indemnity provisions of the bond are sufficiently broad to authorize payment of interest for loss of use of money." *Id.*

¶ 10. ■ It is on the language of the policy that the insurer makes its strongest argument, relying upon the one modern decision, *Empire of Carolina, Inc. v. Continental Casualty Co.*, 414 S.E.2d 389 (N.C. Ct. App. 1992), that finds no policy coverage for interest. *Empire of Carolina* is a bank embezzlement case with policy-coverage language virtually identical to the language in the policy in this case. Like the language in the policy before us, the policy in *Empire of Carolina* covered loss of money or other property and the coverage question turned on whether this language included loss of interest. The court relied upon the

definition of "money" in the policy as "currency, coins, bank notes and bullion, and travelers checks, register checks and money orders held for sale to the public" and held that, under that definition, interest is not money. *Id.* at 391. In reaching that conclusion, the court held that the coverage provision was unambiguous. *Id.* We start with the construction of the language at issue here. Putting aside the policy considerations that lie behind a fair interpretation of the language, we agree that awarding interest is consistent with the policy language in this case, certainly if viewed liberally due to ambiguity. We reject the reasoning of *Empire of Carolina.* The definition of "money" in the policy in that case does not apply here.[9]

¶ 11. Moreover, it is not clear from the explanation in *Empire of Carolina* whether the court rejected interest as "money" because the interest never physically existed or instead because the interest was not in the form listed in the definition. Neither rationale is convincing. The definition does not address whether the money has to actually exist at the time of the embezzlement. The second rationale arbitrarily limits the coverage for no obvious purpose. Thus, if a bank officer embezzled from bank deposits without physically carrying cash, travelers or register checks, or money orders out of the bank, there would be no coverage for that embezzlement because the definition does not include deposits and the embezzlement did not involve the physical forms of "money" specified in the definition. It is more likely that the distinction is between money — or something that is de facto money — and other assets of the Town, such as a vehicle. Thus,

---

[9] Section IV of the policy, which contains the coverage involved here, provides a definition entitled MONEY. It states: "The term 'Money' shall mean currency, coin, bank notes, uncanceled and precanceled postage and unused postage in postage meters." As in the definition, wherever the word "money" is used in the coverage text, it is capitalized. This also is true for other defined words. The one exception is in Part 3, Agreement H, paragraph a, the coverage part for losses sustained through embezzlement under which the Town is claiming. This is probably true because this part also covers "other property" and the definition is unimportant.

The Town argued below that the policy contains no relevant definition of "money" and insurer did not contest this position. The trial court therefore concluded that " 'loss of money' is undefined in the relevant provision of the policy." While we can distinguish *Empire of Carolina* on this basis, we have addressed the decision directly in the text and conclude that we are not persuaded by its rationale.

the use of the term "money" refers to liquidity, not to the form of the asset.[10]

¶ 12. At best, the reasoning of *Empire of Carolina* suggests ambiguity, which, as we noted above, must be resolved in favor of the insured. We note from other reported decisions that fidelity policies often have potential income-exclusion provisions, which prohibit recovery of "potential income, including but not limited to interest and dividends, not realized by the insured." *St. Paul Fire & Marine Ins. Co. v. Branch Bank & Trust Co.*, 834 F.2d 416, 417 (4th Cir. 1987). The failure to include such language in this policy reinforces our view that the language is at least ambiguous and insurer could have removed the ambiguity. See *United S. Bank v. Glens Falls Ins. Co.*, 548 F. Supp. 355, 357 (M.D. Tenn. 1982); cf. *Cambridge Trust Co.*, 591 N.E.2d at 1121 (stating that fidelity policies frequently contain exclusions for embezzlement loss "proved only by an inventory computation or a profit and loss computation" and that the absence of such exclusions shows that inventory computation "is all the more easily acceptable as sufficient"). Insurer also disputes the rationales of the majority-rule cases, arguing that the theory that the Town should be compensated for the loss of use of the money through interest might apply to a financial institution that holds money to invest it for profit, but not for another kind of entity. It further argues that "damages" are not recoverable under the fidelity-policy language, so it is irrelevant whether the Town can recover interest from its embezzling employee.

¶ 13. We do not accept that the loss of use of the money embezzled should be recognized only in the case of financial institutions. Whether the Town would have invested the interest or used it, its inability to do either has significant consequences. A dollar restored today is not likely to purchase what a dollar would have when the embezzlement occurred. Not surprisingly, one of the leading cases on point, *Borough of Totowa*, involves embezzlement from a municipality, not a financial institution. See also *City of Scottsbluff v. S. Sur. Co.*, 246 N.W. 346, 348 (Neb. 1933).

---

[10] As we noted above, *supra*, ¶ 3 n.3, we have analyzed the loss of interest as loss of "money" and not loss of "other property." We note, however, that other courts have addressed the form in which funds are kept as "other property" in the face of the argument that the form is not cash. See *Imperial Ins., Inc. v. Emp'rs Liab. Assurance Corp.*, 442 F.2d 1197, 1199 (D.C. Cir. 1970); *Paddleford v. Fid. & Cas. Co.*, 100 F.2d 606, 614 (7th Cir. 1938), *overruled on other grounds by Cont'l Corp. v. Aetna Cas. & Sur. Co.*, 892 F.2d 540 (7th Cir. 1989).

22

¶ 14. ■ Finally, we are not persuaded by insurer's emphasis that payments under the policy are not damages. The point of fidelity insurance is to restore the losses caused by the defalcation of the employee. It is reasonable to look at what those losses are under the law applicable to the employee's liability. See *Estate of Lash*, 776 A.2d at 770. Our law is that where damages are reasonably certain, prejudgment interest is awarded as a matter of right. See *d'Arc Turcotte v. Estate of LaRose*, 153 Vt. 196, 199, 569 A.2d 1086, 1088 (1989) ("Plaintiffs who are awarded interest will be made whole; those not awarded interest will not, contrary to the purpose of compensatory damages."); *Birchwood Land Co. v. Ormond Bushey & Sons, Inc.*, 2013 VT 60, ¶ 24, 194 Vt. 478, 82 A.3d 539. In this case, the damages were calculated by the outside auditor and easily met the "reasonably certain" standard.[11]

¶ 15. Separately, insurer argues that if interest is allowed as an item of recovery, the Town cannot also receive prejudgment interest on the total amount owed based on the delay in the insurer's payment, as the trial court awarded. Insurer argues that this would result in interest on interest, or compound interest, and that result is prohibited by our decision in *Greenmoss Builders, Inc. v. Dun & Bradstreet, Inc.*, 149 Vt. 365, 370, 543 A.2d 1320, 1323-24 (1988).

¶ 16. *Greenmoss Builders* is not on point. In that case, the plaintiff argued that interest on a judgment should be compounded annually. We concluded that the controlling statute, 9 V.S.A. § 41a(a), calls for simple interest without compounding. *Id.* *Greenmoss Builders* has no relevance here because the court did not compound either the prejudgment or postjudgment interest it awarded.

¶ 17. As discussed in *Bank of Brighton*, we are dealing with two types of interest, and insurer is arguing that the Town should receive *no* interest on its policy liability after demand for payment, however long payment is delayed. Such a result would reward payment delay and likely undermine the Town's ability to receive full compensation. The fact that the baseline loss against which prejudgment interest was calculated includes a component representing predemand interest for loss of use of the embezzled funds in this case does not mean that the resulting award is

---

[11] We are not by this comparison holding that the interest rate is the same in both instances.

invalid compounded "interest on interest." Cf. *Quinlan v. Hamel*, 143 Vt. 147, 149, 465 A.2d 232, 233 (1983).

¶ 18. Insurer also has appealed the trial court's decision that insurer is liable for audit costs and attorney's fees. As the court noted, however, it did not have to reach that issue because the interest alone put the Town's claim over the $500,000 coverage maximum. The Town has not disputed this conclusion. Accordingly, we do not reach insurer's appeal on these items.

¶ 19. For the same reason, we also do not reach insurer's argument that the trial court erred in dismissing its counterclaims, which sought the return of certain amounts it had paid the Town. Even if insurer were to prevail on its counterclaims, the amount owed to the Town, once it includes the interest as we held above, exceeds the policy limit. Thus, the counterclaim issues can have no effect on the Town's recovery.

¶ 20. The Town has filed a cross-appeal arguing that the trial court should not have dismissed its claim against the insurer for bad-faith denial of its claim for interest and costs. The court found that insurer's claim that the policy did not cover the interest was "fairly debatable" because the "correct answer is not immediately obvious and there are no controlling Vermont decisions on point." The Town argues that all of the precedents except one supported the Town's position and the one, *Empire of Carolina*, was not on point because it was based on a special narrow definition of "money."

¶ 21. ▪ Under our decision recognizing first-party bad faith claims against insurers, such claims require a showing that "(1) the insurance company had no reasonable basis to deny benefits of the policy, and (2) the company knew or recklessly disregarded the fact that no reasonable basis existed for denying the claim." *Bushey v. Allstate Ins. Co.*, 164 Vt. 399, 402, 670 A.2d 807, 809 (1995); see also *Peerless Ins. Co. v. Frederick*, 2004 VT 126, ¶ 13, 177 Vt. 441, 869 A.2d 112; *Lauzon v. State Farm Mut. Auto Ins. Co.*, 164 Vt. 620, 621, 674 A.2d 1246, 1247 (1995) (mem.). Under the first requirement, summary judgment can be awarded to an insurer if the court finds the insurer's position was "fairly debatable as a matter of law." *Bushey*, 164 Vt. at 403, 670 A.2d at 810; see also *Lauzon*, 164 Vt. at 621, 674 A.2d at 1247 ("Because a realistic question regarding the extent of liability existed, defendant's actions do not rise to the level of bad faith.").

¶ 22. ▇ We agree with the trial court that insurer's position was fairly debatable as a matter of law. As the trial court found, we have not yet decided this question.[12] Although we have found that the decisions from other jurisdictions in favor of the Town's position are persuasive, this does not mean that all precedents support the Town. See F. English, Annotation, *Time From Which Interest Begins to Run on Fidelity or Public Officer's Bond*, 57 A.L.R.2d 1317, § 2(a), (b) (1958 & Supp. 2014) (collecting cases holding that interest runs only from demand). Although we reject its reasoning, we do not find *Empire of Carolina*, the chief case relied upon by insurer, as off-point as the Town argues. Analysis by some commentators supports insurer's position. See W. Bogaert & A. Caplan, *Computing the Amount of Compensable Loss Under the Financial Institution Bond*, 33 Tort & Ins. L.J. 807, 816-18 (1998); K. Jacobson, *Is Interest Covered by Fidelity and Financial Institution Bonds?*, 86 Banking L.J. 692, 696 (1969) ("The clear implication is that 'loss' under Insuring Agreement I does not include damage. This necessarily excludes any claim for interest as damages, at least when the underwriter has not acted in such a way that damages could be assessed against it for its own default.").

¶ 23. Much of the Town's argument on this question is based on the failure of insurer to show supporting law for its position in responding to the Town's insurance claim. This evidence goes to the second element of the bad faith standard as set out in *Bushey*. The trial court's decision is based on the first element, not the second.

*Affirmed.*

---

[12] Our analysis above covers only the Town's claim for interest and not its claims for audit costs and attorney's fees because the Town's recovery reaches the policy coverage limit without these items. Nevertheless, our conclusion that the issues were fairly debatable applies equally to the audit costs and attorney's fees claims. The trial court used the same analysis as it used for interest in concluding that the Town could recover for these items. The Town raises no grounds to differentiate them.